ORIGINAL

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10              October 2015 Grand Jury

11   UNITED STATES OF AMERICA,           CR No. 15-558(B)-SVW

12            Plaintiff,                 S E C O N D
                                         S U P E R S E D I N G
13            v.                         I N D I C T M E N T

14   ARTASHES DARBINYAN,                 [18 U.S.C. § 1341:  Mail Fraud; 18
     ORBEL HAKOBYAN,                     U.S.C. § 1028A(a)(1):  Aggravated
15      aka "Arthur," and               Identity Theft; 18 U.S.C.
     ALBERT YAGUBYAN,                    § 1956(h):  Conspiracy to Launder
16                                       Monetary Instruments; 18 U.S.C.
            Defendants.                  § 1956(a)(1)(B)(i):  Concealment
17                                       Money Laundering; 18 U.S.C.
                                         § 1005:  False Entry in Bank
18                                       Reports; 18 U.S.C. § 1512(b)(3):
                                         Witness Tampering; 18 U.S.C.
19                                       § 1344(2):  Bank Fraud; 18 U.S.C.
                                         § 2:  Aiding and Abetting and
20                                       Causing an Act to be Done; 18
                                         U.S.C. § 981(a)(1)(C); 18 U.S.C.
21                                       § 982(a)(2)(A); 21 U.S.C. § 853,
                                         28 U.S.C. § 2461(c):  Criminal
22                                       Forfeiture]

23

24

        The Grand Jury charges:
25

26

27

28

COUNTS ONE THROUGH FOUR

[18 U.S.C. §§ 1341, 2]

[Defendant DARBINYAN]

A.   INTRODUCTORY ALLEGATIONS

At all times relevant to this Second Superseding Indictment:

1.   United States law provided protection for trademarks by allowing holders of trademarks to register their marks with the United States Patent and Trademark Office ("USPTO").  Once a trademark was registered, the mark, along with the serial number assigned by the USPTO, and the holder's name and address were publicly available on the USPTO's website.  The USPTO was located in Alexandria, Virginia.

2.   United States Customs and Border Protection ("CBP") provided a separate registration service.  Holders of trademarks already registered with the USPTO could register with CBP, and CBP would screen for and block imports that infringed on marks registered in CBP's database.  The service was known as Intellectual Property Rights Recordation ("IPR") and cost $190.

3.   Trademark Compliance Center ("TCC") and Trademark Compliance Office ("TCO") were California companies that purported to offer the IPR registration service as well as a trademark infringement monitoring service.  TCC and TCO solicited clients through mass mailings sent through the U.S. mail.

4.   From at least in or about September 2013 to in or about September 2015, defendant ARTASHES DARBINYAN ("defendant DARBINYAN"), a resident of Glendale, California, operated and controlled TCC and TCO.

B.    THE SCHEME TO DEFRAUD

    5.    Beginning in or about September 2013, and continuing through in or about September 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant DARBINYAN, aided and abetted by others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victims of TCC and TCO, and to obtain money and property from victims of TCC and TCO by means of material false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

    6.    The scheme to defraud operated in substance in the following manner:

        a.    Defendant DARBINYAN, using the names of other persons, namely "E.S." and "I.B.", opened accounts for TCC and TCO at virtual office centers, that is, businesses that offered call-answering and mail-forwarding services as well as private and shared office space to its customers, in Washington, D.C.; Arlington, Virginia; Alexandria, Virginia; Encino, California; and Glendale, California (the "Virtual Office Centers").

        b.    Defendant DARBINYAN caused solicitations to be sent to U.S. trademark-holders that purported to offer services for a fee. The solicitations were printed and sent by a commercial mailer according to defendant DARBINYAN's instructions.    The solicitations purported to come from TCC and TCO, and were formatted to look like official invoices.    Through these solicitations, TCC and TCO offered to register the trademark-holders' trademarks with CBP's IPR system,

3

1   monitor their trademarks for possibly infringing marks, and send

2   regular reports to the trademark-holder in return for a fee of $385.

3   The solicitations listed the trademark-holder's name and address, the

4   name of the mark, and the USPTO serial number for the trademark.

5          c.   The solicitations that defendant DARBINYAN caused to

6   be sent included an envelope in which the trademark-holder was

7   supposed to send the fee for the offered services.   The envelopes

8   were pre-addressed to TCC and TCO at the Virtual Office Centers in

9   Washington, D.C., and Virginia.

10         d.   Defendant DARBINYAN instructed employees at the

11  Virtual Office Centers in Washington, D.C., and Virginia to send the

12  envelopes they received to the Virtual Office Centers in California.

13         e.   Defendant DARBINYAN obtained the envelopes and the

14  checks and money orders (collectively, "the checks") they enclosed

15  from the Virtual Office Centers in California.   Thereafter, defendant

16  DARBINYAN deposited the checks in bank accounts he controlled and

17  cashed the checks, and kept the proceeds.

18         f.   At the time that defendant DARBINYAN sent the

19  solicitations and caused the solicitations to be sent, he did not

20  intend to provide the promised services, and defendant DARBINYAN

21  never did provide the promised services.

22         g.   In order to effectuate his scheme and hide his role in

23  it, defendant DARBINYAN regularly changed phone numbers, communicated

24  via multiple bogus email addresses, created websites for TCC and TCO,

25  set up "Voice over Internet Protocol" (VoIP) phone lines for TCC and

26  TCO, and logged in from wireless Internet service providers (ISPs),

27  which are harder to trace to individual devices and users.

28

1     h.    The accounts and services defendant DARBINYAN used in

2 furtherance of the scheme were all registered under the names of

3 other people and included the following:

4          i.    Using "T.G.", defendant DARBINYAN opened a bank

5 account in the name of TCC and deposited and cashed checks.

6          ii.   Using "E.S.", defendant DARBINYAN opened a bank

7 account into which proceeds of the scheme were transferred, opened

8 accounts at Virtual Office Centers, registered a website for TCC,

9 created an email account, and set up a VoIP phone line.

10         iii.  Using "I.B.", defendant DARBINYAN opened a bank

11 account in the name of TCO and I.B., opened accounts at Virtual Office

12 Centers, registered a website for TCO, created an email account, and

13 deposited and cashed checks.

14         iv.   Using "A.K.", defendant DARBINYAN opened bank

15 accounts, one of which was used to transfer proceeds to a gold dealer,

16 opened an account at a Virtual Office Center, created an email

17 account, and set up a VoIP phone line.

18 C.    USE OF THE MAILS

19     7.    On or about the dates set forth below, within the Central

20 District of California, and elsewhere, defendant DARBINYAN, for the

21 purpose of executing and attempting to execute the above-described

22 scheme to defraud, knowingly caused the following items to be placed

23 in an authorized depository for mail matter to be sent and delivered

24 by the United States Postal Service ("USPS") and to be deposited with

25 and to be delivered by a commercial interstate carrier, namely FedEx,

26 according to the directions thereon:

27

28

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| ONE | July 30, 2014 | FedEx package containing victims' checks with tracking number 770707682841, sent from virtual office center in Alexandria, VA, addressed to Trademark Compliance Center, and delivered to virtual office center in Encino, CA |
| TWO | In or about December 2014 | Envelope containing solicitation sent via USPS by commercial mailer from Trademark Compliance Center, addressed to Ime Holdings, LLC, and delivered in Los Angeles, CA |
| THREE | In or about April 2015 | Envelope containing solicitation sent via USPS by commercial mailer from Trademark Compliance Office, addressed to K.T., and delivered in Los Angeles, CA |
| FOUR | May 18, 2015 | FedEx package containing victims' checks with tracking number 872677618257, sent from virtual office center in Arlington, VA, addressed to Trademark Compliance Office, and delivered to virtual office center in Glendale, CA |

COUNTS FIVE THROUGH SEVEN

[18 U.S.C. §§ 1028A(a)(1), 2]

[Defendant DARBINYAN]

8. The Grand Jury hereby repeats and realleges Paragraphs 1 through 6, including all subparagraphs, of this Second Superseding Indictment, as if fully set forth herein.

9. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant DARBINYAN knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, a means of identification that defendant DARBINYAN knew belonged to another person, during and in relation to felony violations of Title 18, United States Code, Sections 1341 and 1344, as charged in the counts of this Second Superseding Indictment identified below, namely, defendant DARBINYAN used and caused to be used the social security number, name, and date of birth of the persons identified below to open Wells Fargo bank accounts in their names:

| COUNT | DATE | MEANS OF IDENTIFICATION | FELONY VIOLATION |
|-------|------|-------------------------|------------------|
| FIVE | December 9, 2013 | T.G. | COUNT TWO |
| SIX | February 17, 2015 | I.B. | COUNT THREE |
| SEVEN | June 18, 2015 | N.S. | COUNT FIFTEEN |

COUNT EIGHT

[18 U.S.C. § 1956(h)]

[Defendants DARBINYAN, HAKOBYAN, YAGUBYAN]

A. INTRODUCTORY ALLEGATIONS

10. The Grand Jury hereby repeats and realleges Paragraphs 1 through 6, including all subparagraphs, of this Second Superseding Indictment, as if fully set forth herein.

11. At all times relevant to this Second Superseding Indictment:

    a. Defendant ORBEL HAKOBYAN ("defendant HAKOBYAN") was a resident of Los Angeles County, California.

    b. Defendant ALBERT YAGUBYAN ("defendant YAGUBYAN") was a resident of Burbank, California, and was employed by Wells Fargo Bank ("Wells Fargo") from in or about 2000 until in or about October 2015. His most recent position was manager of the Wells Fargo branch located at 535 North Brand Boulevard, Glendale, California (hereinafter "Brand Boulevard branch").

    c. Transgold Capital was a gold broker located in Los Angeles County, California.

    d. Gold Depot was a gold dealer located in Los Angeles County, California.

B. THE OBJECT OF THE CONSPIRACY

12. Beginning in or about September 2013, and continuing through on or about September 18, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants DARBINYAN, HAKOBYAN, and YAGUBYAN, together with others known and unknown to the Grand Jury, knowingly conspired, combined, and agreed

1   to commit an offense against the United States, namely: money

2   laundering, in violation of Title 18, United States Code, Section

3   1956(a)(1)(B)(i) by conducting and attempting to conduct financial

4   transactions, affecting interstate and foreign commerce, involving

5   the proceeds of a specified unlawful activity, that is, mail fraud,

6   in violation of Title 18, United States Code, Section 1341, knowing

7   that the property involved in the financial transactions represented

8   the proceeds of some form of unlawful activity constituting a felony

9   under state or federal law, and knowing that the transactions were

10  designed in whole and in part to conceal and disguise the nature, the

11  location, the source, the ownership, and control of the proceeds of

12  said specified unlawful activity.

13  C.    THE MANNER AND MEANS OF THE CONSPIRACY

14       13.   The object of the conspiracy was carried out, and was

15  intended to be carried out, in substance, as follows:

16       a.    Defendant DARBINYAN, and others known and unknown to

17  the Grand Jury, would open and cause to be opened fraudulent bank

18  accounts (the "bogus bank accounts") in the names of bogus

19  businesses, such as TCC and TCO, using the identities of other

20  people, knowing that those identities did not belong to the actual

21  individuals opening and controlling the accounts, for the purpose of

22  concealing the co-conspirators' ownership and control over illegal

23  proceeds that would be deposited into these accounts.

24       b.    Defendant YAGUBYAN would direct Wells Fargo employees

25  to approve the opening of the bogus bank accounts for defendant

26  DARBINYAN and other co-conspirators even though defendant YAGUBYAN

27

28

1   and the other co-conspirators would not comply with Wells Fargo rules

2   and policies when they opened the bogus bank accounts.

3        c.   Defendants DARBINYAN and HAKOBYAN would pick up from

4   the virtual office centers in Encino and Glendale the checks the

5   victims had made out to TCC and TCO and would deposit them into the

6   bogus bank accounts at Wells Fargo.

7        d.   Defendant YAGUBYAN, in exchange for a share of the

8   proceeds, would direct Wells Fargo employees at the Brand Boulevard

9   branch to process and approve fraudulent transactions that defendants

10  DARBINYAN and HAKOBYAN initiated, namely withdrawals of funds from

11  accounts not in their names, in violation of Wells Fargo rules and

12  policies.

13       e.   Shortly after depositing the victims' checks,

14  defendants DARBINYAN and HAKOBYAN, with the assistance of Wells Fargo

15  employees acting under the direction of defendant YAGUBYAN, would

16  obtain cashier's checks made out to Transgold Capital drawn against

17  the bogus TCC bank account.

18       f.   Defendants DARBINYAN and HAKOBYAN would then use the

19  cashier's checks, as well as wire transfers from the bogus TCO bank

20  account, to purchase gold.

21       g.   Defendants DARBINYAN and HAKOBYAN would also transfer

22  funds from the bogus TCC and TCO bank accounts to other bogus bank

23  accounts under defendants DARBINYAN and HAKOBYAN's control and then

24  make fraudulent cash withdrawals from those accounts.

25       h.   After the bogus bank accounts were closed, defendant

26  DARBINYAN and his co-conspirators would cash checks from victims,

27  made out to TCO, at check cashing businesses by falsely representing

28

that the person cashing the check was the person who had authority over TCO.

D.   OVERT ACTS

14.   In furtherance of the conspiracy, and to accomplish its object, defendants DARBINYAN, HAKOBYAN, and YAGUBYAN, together with other co-conspirators known and unknown to the Grand Jury, on or about the dates set forth below, committed and willfully caused others to commit the following overt acts, among others, within the Central District of California, and elsewhere:

Overt Act 1:   On or about September 25, 2013, defendant DARBINYAN and co-conspirators fraudulently opened, and caused to be opened, Wells Fargo bank account xxxxxx9221 in the name of E.S. (the "E.S. account").

Overt Act 2:   On or about December 9, 2013, defendant DARBINYAN and co-conspirators fraudulently opened, and caused to be opened, the Wells Fargo bank account xxxxxx0639 in the name of TCC, with the supposed signatory being T.G. (the "TCC account").

Overt Act 3:   On or about January 27, 2014, at a Wells Fargo ATM in Burbank, California, defendant DARBINYAN and co-conspirators deposited and caused to be deposited into the TCC account 24 checks from victims made payable to TCC, totaling $10,725, all of which constituted proceeds of mail fraud.

Overt Act 4:   On or about June 30, 2014, at the Brand Boulevard branch, defendant DARBINYAN and co-conspirators deposited and caused to be deposited into the TCC account 50 checks from victims made payable to TCC, totaling $19,250, all of which constituted proceeds of mail fraud.

1      Overt Act 5:  On or about July 11, 2014, at the Brand Boulevard
2  branch, defendants DARBINYAN and HAKOBYAN and co-conspirators caused
3  a cashier's check in the amount of $52,470, made payable to Transgold
4  Capital and supposedly authorized by T.G., to be issued with funds
5  drawn against the TCC account, which funds all constituted proceeds
6  of mail fraud; defendant YAGUBYAN instructed Wells Fargo employee #1
7  to approve the cashier's check.

8      Overt Act 6:  On or about July 21, 2014, defendants DARBINYAN
9  and HAKOBYAN purchased and caused to be purchased $52,470 in gold
10  from Transgold Capital, with proceeds of mail fraud.

11      Overt Act 7:  On or about December 18, 2014, at the Brand
12  Boulevard branch, defendants DARBINYAN and HAKOBYAN and co-
13  conspirators caused a cashier's check in the amount of $34,200, made
14  payable to Transgold Capital and supposedly authorized by T.G., to be
15  issued with funds drawn off the TCC account, which funds all
16  constituted proceeds of mail fraud; defendant YAGUBYAN instructed
17  Wells Fargo employee #2 to approve the cashier's check.

18      Overt Act 8:  On or about December 23, 2014, at the Brand
19  Boulevard branch, defendants DARBINYAN and HAKOBYAN and co-
20  conspirators caused a cashier's check in the amount of $34,000, made
21  payable to Transgold Capital and supposedly authorized by T.G., to be
22  issued with funds drawn against the TCC account, which funds all
23  constituted proceeds of mail fraud; defendant YAGUBYAN had instructed
24  Wells Fargo employee #1 to approve the cashier's check.

25      Overt Act 9:  On or about December 23, 2014, defendants
26  DARBINYAN and HAKOBYAN purchased and caused to be purchased $68,200
27  in gold from Transgold Capital, with proceeds of mail fraud.

28

1   <u>Overt Act 10</u>:  On or about January 7, 2015, at the Brand

2   Boulevard branch, defendant HAKOBYAN deposited a check, addressed to

3   E.S., drawn on the TCC account, and bearing the purported signature

4   of T.G., in the amount of $30,000, into the E.S. account, and

5   obtained $9,000 cash back from the deposit, which defendant YAGUBYAN

6   instructed Wells Fargo employee #2 to approve; the funds all

7   constituted proceeds of mail fraud.

8   <u>Overt Act 11</u>:  On or about January 12, 2015, at the Brand

9   Boulevard branch, defendant HAKOBYAN, assisted by Wells Fargo

10  employee #2, deposited a $30,000 check drawn on the TCC account into

11  the E.S. account, and obtained $9,500 cash back, transactions that

12  defendant YAGUBYAN had instructed Wells Fargo employee #2 to approve;

13  the funds all constituted proceeds of mail fraud.

14  <u>Overt Act 12</u>:  On or about January 13, 2015, at the Brand

15  Boulevard branch, defendant HAKOBYAN and co-conspirators fraudulently

16  withdrew $9,900 in cash from the E.S. account in a transaction that

17  defendant YAGUBYAN had instructed Wells Fargo employee #2 to approve;

18  the funds all constituted proceeds of mail fraud.

19  <u>Overt Act 13</u>:  On or about January 14, 2015, at the Brand

20  Boulevard branch, defendant DARBINYAN and co-conspirators

21  fraudulently withdrew $9,800 in cash from the E.S. account in a

22  transaction that defendant YAGUBYAN had instructed Wells Fargo

23  employee #1 to approve; the funds all constituted proceeds of mail

24  fraud.

25  <u>Overt Act 14</u>:  On or about January 30, 2015, defendant YAGUBYAN

26  texted Wells Fargo employee #1 the cell phone number then being used

27  by defendant DARBINYAN, which Wells Fargo employee #1 then called.

28

1    Overt Act 15:   On or about January 30, 2015, at the Brand

2    Boulevard branch, defendant YAGUBYAN instructed Wells Fargo employee

3    #1 to fraudulently open Wells Fargo bank account xxxxxx7606 in the

4    name of I.B., for use by defendant DARBINYAN and co-conspirators.

5    Overt Act 16:   On or about January 31, 2015, at the Brand

6    Boulevard branch, defendant YAGUBYAN instructed Wells Fargo employee

7    #1 to fraudulently open Wells Fargo bank account xxxxxx3335 in the

8    name of A.K., for use by defendant DARBINYAN and co-conspirators.

9    Overt Act 17:   On or about February 17, 2015, at the Brand

10   Boulevard branch, defendant YAGUBYAN instructed Wells Fargo employee

11   #2 to fraudulently open Wells Fargo bank account xxxxxx1055 in the

12   name of TCO (the "TCO account"), with the supposed signatory being

13   I.B., for use by defendant DARBINYAN and co-conspirators.

14   Overt Act 18:   On or about February 17, 2015, at the Brand

15   Boulevard branch, defendant YAGUBYAN instructed Wells Fargo employee

16   #2 to fraudulently open Wells Fargo bank account xxxxxx2815 in the

17   name of Flexis Group (the "Flexis account"), with the supposed

18   signatory being A.K., for use by defendant DARBINYAN and co-

19   conspirators.

20   Overt Act 19:   On or about April 20, 2015, at the Brand

21   Boulevard branch, defendant DARBINYAN and co-conspirators deposited

22   and caused to be deposited into the TCO account 78 checks from

23   victims made payable to TCO, totaling $30,030, all of which

24   constituted proceeds of mail fraud.

25   Overt Act 20:   On or about April 20, 2015, defendant DARBINYAN

26   and co-conspirators deposited and caused to be deposited a check in

27   the amount of $28,430, made payable to Flexis Group, drawn on the TCO

28

1 account, and bearing the purported signature of I.B., to be deposited

2 into the Flexis account; the funds all constituted proceeds of mail

3 fraud.

4     Overt Act 21:  On or about April 22, 2015, defendant DARBINYAN

5 purchased $38,222.80 in gold from Gold Depot by fraudulently causing

6 $38,222.80 to be wired to the bank account of Gold Depot at Comerica

7 Bank from the Flexis account in a transaction that defendant YAGUBYAN

8 instructed Wells Fargo employee #2 to process; the funds all

9 constituted proceeds of mail fraud.

10     Overt Act 22:  On or about April 27, 2015, defendant YAGUBYAN

11 called the Wells Fargo loss prevention department and attempted to

12 lift a freeze of the TCO and Flexis accounts, which had been frozen

13 and marked for closure a few days earlier by a Wells Fargo loss

14 prevention agent, by falsely stating that he had "gotten a hold of"

15 I.B. and A.K. when in fact he had only spoken to defendant DARBINYAN.

16     Overt Act 23:  On or about May 7, 2015, defendant DARBINYAN,

17 pretending to be I.B., called the Wells Fargo loss prevention center

18 to inquire about obtaining the balance of the funds in the TCO

19 account.

20     Overt Act 24:  On or about May 7, 2015, defendant DARBINYAN

21 fraudulently withdrew the balance in the fraudulent TCO account, in

22 the form of a cashier's check made payable to I.B. in the amount of

23 $32,145.69 and $30,000 in cash, in a transaction that defendant

24 YAGUBYAN instructed Wells Fargo employee #2 to approve; the funds all

25 constituted proceeds of mail fraud.

26

27

28

1    Overt Act 25:  On or about May 11, 2015, defendant YAGUBYAN

2  texted defendant DARBINYAN to come to the Brand Boulevard branch "at

3  12" to open a new fraudulent account.

4    Overt Act 26:  On or about May 11, 2015, at the Brand Boulevard

5  branch, defendant DARBINYAN fraudulently opened, and caused to be

6  opened, Wells Fargo bank account xxxxxx0032 in the name of AGS

7  Commodity Trading Inc., with the supposed signatory being I.C., which

8  defendant YAGUBYAN instructed Wells Fargo employee #2 to approve.

9    Overt Act 27:  On or about May 13, 2015, defendant DARBINYAN,

10  pretending to be A.K., called the Wells Fargo loss prevention center

11  to inquire about a tracking number for an envelope containing a

12  cashier's check, made out to A.K., constituting the balance of the

13  funds in the Flexis account.

14    Overt Act 28:  On or about June 17, 2015, at the Brand Boulevard

15  branch, defendant DARBINYAN fraudulently opened, and caused to be

16  opened, Wells Fargo bank account xxxxxx2576 in the name of N.S.,

17  which defendant YAGUBYAN instructed Wells Fargo employee #2 to

18  approve.

19    Overt Act 29:  On or about June 18, 2015, at the Brand Boulevard

20  branch, defendant DARBINYAN and co-conspirators, fraudulently opened,

21  and caused to be opened, Wells Fargo bank account xxxxxx1082 in the

22  name of Pathway Investment Group (the "Pathway account"), with the

23  supposed signatory being N.S., which defendant YAGUBYAN instructed

24  Wells Fargo employee #2 to approve.

25    Overt Act 30:  On or about June 18, 2015, in connection with the

26  opening of the Pathway account, Wells Fargo employee #2 texted

27  YAGUBYAN "Good pay day tomorrow."

28

1         <u>Overt Act 31</u>:  On or about July 13, 2015, defendant DARBINYAN

2    and co-conspirators cashed 46 checks, totaling $19,935, from victims

3    made payable to TCO at Jim's Check Cashing in Arcadia, California,

4    all of which constituted proceeds of mail fraud.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNTS NINE THROUGH THIRTEEN

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2]

15.   The Grand Jury hereby repeats and realleges Paragraphs 1 through 6, and 11, 13, and 14, including all subparagraphs, of this Second Superseding Indictment as if fully set forth herein.

16.   On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, the following defendants, conducted, attempted to conduct, aided and abetted the conducting of, and willfully caused others to conduct the following financial transactions affecting interstate and foreign commerce that in fact involved the proceeds of Specified Unlawful Activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, knowing that (a) the property involved in the transactions represented the proceeds of some form of unlawful activity constituting a felony under state or federal law, and (b) the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity:

| COUNT | DATE | DEFENDANTS | FINANCIAL TRANSACTION |
|-------|------|-----------|----------------------|
| NINE | July 29, 2014 | DARBINYAN, HAKOBYAN, YAGUBYAN | Issuance of cashier's check in the amount of $52,400 drawn against TCC account xxxxxx0639 |
| TEN | August 1, 2014 | DARBINYAN, HAKOBYAN | Purchase of gold with cashier's check in the amount of $52,400 drawn against TCC account xxxxxx0639 |

| COUNT | DATE | DEFENDANTS | FINANCIAL TRANSACTION |
|---|---|---|---|
| ELEVEN | January 7, 2015 | DARBINYAN, HAKOBYAN, YAGUBYAN | Deposit of $30,000 check from TCC account xxxxxx0639 into E.S. account xxxxxx9221, with cash back withdrawal of $9,000 |
| TWELVE | April 22, 2015 | DARBINYAN, YAGUBYAN | Wire transfer of $38,222.80 to Gold Depot from Flexis Group account xxxxxx2815 |
| THIRTEEN | May 7, 2015 | DARBINYAN, YAGUBYAN | Closeout transaction of TCO account xxxxxx1055: issuance of cashier's check in the amount of $32,145.69 and $30,000 cash |

1

COUNT FOURTEEN

2

[18 U.S.C. §§ 1005, 2]

3

[Defendant YAGUBYAN]

4        17.   The Grand Jury hereby repeats and realleges Paragraphs 1

5   through 6, and 11, 13, and 14, including all subparagraphs, of this

6   Second Superseding Indictment as if fully set forth herein.

7        18.   On or about June 18, 2015, in Los Angeles County, within

8   the Central District of California, and elsewhere, defendant

9   YAGUBYAN, with the intent to defraud Wells Fargo Bank, a financial

10  institution whose deposits were insured by the Federal Deposit

11  Insurance Corporation, knowingly made and caused to be made material

12  false entries in the books, reports, and statements of Wells Fargo

13  Bank, in that he instructed a Wells Fargo Bank employee whom

14  defendant YAGUBYAN supervised to open a bank account in the name of

15  Pathway Investment Group and to identify the authorized signatory on

16  the account as N.S. when, in truth and in fact as defendant YAGUBYAN

17  then well knew, the applicant opening the account and purporting to

18  be the signatory N.S. was not N.S.

19

20

21

22

23

24

25

26

27

28

COUNT FIFTEEN

[18 U.S.C. § 1512(b)(3)]

[Defendant YAGUBYAN]

19.   The Grand Jury hereby repeats and realleges Paragraphs 1 through 6, and 11, 13, and 14, including all subparagraphs, of this Second Superseding Indictment as if fully set forth herein.

20.   On or about September 21, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant YAGUBYAN did knowingly attempt to corruptly persuade, and did corruptly persuade another person, namely Wells Fargo employee #3, with intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission and possible commission of a Federal offense, by instructing Wells Fargo employee #3 to tell federal investigators, namely agents of the United States Postal Inspection Service and Internal Revenue Service-Criminal Investigation, that Wells Fargo employee #3 always checked customers' identification when processing withdrawals, when, in truth and in fact, Wells Fargo employee #3 had not always done so.

COUNT SIXTEEN

[18 U.S.C. §§ 1344(2), 2]

[Defendant DARBINYAN]

21. The Grand Jury hereby repeats and realleges Paragraphs 1 through 6, 11, 13, and 14, including all subparagraphs, as if fully set forth herein.

A.    INTRODUCTORY ALLEGATIONS

22. At all times relevant to this Second Superseding Indictment, Zoom Capital ("ZoomCap") was a Los Angeles-based credit service company that, for a fee, sought to improve its clients' credit profiles and applied for loans and credit lines with domestic financial institutions, whose deposits were insured by the Federal Deposit Insurance Corporation, on their clients' behalf.

B.    THE SCHEME

23. Beginning in or about May 2015, and continuing through in or about September 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant DARBINYAN, aided and abetted by others known and unknown to the Grand Jury, knowingly and with intent to defraud, executed and attempted to execute a scheme to obtain monies, funds, and other property owned by and in the custody and control of financial institutions by means of material false and fraudulent pretenses, representations, and promises, and concealment of material facts.

24. The scheme operated in substance in the following manner:

a.    Defendant DARBINYAN would open accounts at virtual office centers in North Hollywood, Woodland Hills, and Pasadena, in

the names of bogus businesses, namely, Flexis Group, AGS Commodity Trading Inc., and Pathway Investment Group, respectively.

b. To open these accounts, defendant DARBINYAN would use the identities of real people, namely, A.K. for Flexis Group, I.C. for AGS Commodity Trading Inc., and N.S. for Pathway Investment Group, without lawful authority.

c. Defendant DARBINYAN would then open business bank accounts with Wells Fargo at the Brand Boulevard branch under these business names, using the addresses of the virtual office centers and identifying as the accountholders the people listed in paragraph 24(b) above.

d. Defendant DARBINYAN would then submit loan applications to ZoomCap knowing that ZoomCap would then apply to federally insured financial institutions for loans and credit lines in the name of, and on behalf of, the stolen identities and false businesses.

e. Based on these loan applications, defendant DARBINYAN would obtain credit cards that were mailed to the virtual office centers, which defendant DARBINYAN could then use to obtain goods, services, and cash.

C. EXECUTION OF THE SCHEME

25. On or about June 18, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant DARBINYAN knowingly submitted and caused to be submitted to ZoomCap loan applications in the names of A.K., I.C., and N.S., containing material false and fraudulent pretenses, representations, and promises, knowing that they would be the basis for loan and credit

1    card applications submitted to financial institutions insured by the
2    FDIC.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853, 28 U.S.C. § 2461(c)]

26. The allegations contained in Counts One through Twelve of this Second Superseding Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

27. Upon conviction of the offenses in violation of Title 18, United States Code, Section 1341 set forth in Counts One through Four of this Second Superseding Indictment, defendant DARBINYAN shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following: a money judgment in an amount not less than $1,650,000.00, representing the amount of proceeds obtained as a result of the offenses alleged in this Second Superseding Indictment.

28. If any of the property described above, as a result of any act or omission of defendant DARBINYAN: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21,

1 | United States Code, Section 853(p), as incorporated by Title 28,

2 | United States Code, Section 2461(c).

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 981(a)(2)(A), 21 U.S.C. § 853, 28 U.S.C. § 2461(c)]

29.    The allegations contained in Count Fourteen of this Second Superseding Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(2)(A) and Title 28, United States Code, Section 2461(c).

30.    Upon conviction of the offense in violation of Title 18, United States Code, Section 1005 set forth in Count Fourteen of this Second Superseding Indictment, defendant YAGUBYAN shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(2)(A) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.  The property to be forfeited includes, but is not limited to, the following: a money judgment in an amount not less than $1,290,000.00, representing the amount of proceeds obtained as a result of the offense alleged in this Second Superseding Indictment.

31.    If any of the property described above, as a result of any act or omission of defendant YAGUBYAN: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18,

1  United States Code, Section 982(b)(1) and Title 28, United States

2  Code, Section 2461(c).

3

4

5                                          A TRUE BILL

6                                          /S/

7                                          Foreperson

8  EILEEN M. DECKER

9  United States Attorney

10

11 LAWRENCE S. MIDDLETON
   Assistant United States Attorney
12 Chief, Criminal Division

13 GEORGE S. CARDONA
   Assistant United States Attorney
14 Chief, Major Frauds Section

15
   ANDREW WEISSMANN
16 Chief, Fraud Section
   Criminal Division
17 U.S. Department of Justice

18
   BENJAMIN D. SINGER
19 Deputy Chief, Fraud Section
   Criminal Division
20 U.S. Department of Justice

21 WILLIAM E. JOHNSTON
   BRIAN K. KIDD
22 Trial Attorneys, Fraud Section
   Criminal Division
23 U.S. Department of Justice

24

25

26

27

28